May I have one minute for rebuttal? Yeah, sure, sure. Thank you, Your Honor. It's going to cost you one minute, I'm afraid. That's fine, Your Honor. All right. Your Honor, this case is about a rule that requires mandatory detention in the extradition context. Mandatory detention unless the extraditee can show special circumstances. A mandatory detention rule that does not take into account any risk of flight. The Supreme Court in Salerno stated its understanding of Fifth Amendment substantive due process right to liberty when it stated that, in our society, liberty is the norm and detention the carefully limited exception. And the framework for analyzing this presumption of liberty that's set forth in the Constitution was set forth by the Supreme Court in Salerno. And Does it make a difference that, as I understand it, since you filed your appeal, a magistrate judge has concluded the extradition proceedings and has certified, I guess, to the Secretary of State that your client is, in fact, the person named in the extradition request and there is probable cause from the requesting country to extradite him? Should the standard be different now that those proceedings are complete? Your Honor, there's much case law on the subject, and we've cited it in our reply, which states that whether we're talking about the pre-certification context or the post-certification context, that the Court still applies the same special circumstances rule, and therefore, any challenge to pre-certification detention would not be distinct from post-certification detention. So your position is that the standard of review is the same, it doesn't make any difference, that the only thing remaining to be done is to honor the extradition request and to extradite Mr. Wang? No, Your Honor. I don't believe it does make a difference. And from substantive due process point of view, the focus should be on whether the government has a compelling interest by either pre-certification or post-certification. And the government interest in both of those contexts is the same. Didn't the Supreme Court say in Wright v. Hankel that there was a compelling interest, and that was to actually have someone to produce, to honor the request of the requesting party, so that there's actually a live body that we can give them in response to the extradition request? Yes, Your Honor. The Supreme Court in Wright v. Hankel did talk about the compelling government interest, but then it didn't really talk about what can outweigh that compelling government interest. It stated that because there's this compelling governmental interest, there still is an individual's liberty interest, and because of that liberty interest, the Court has an equitable power to grant bail, but it didn't really spell out. But if there is a compelling interest, then don't we weigh that against the individual's interest in liberty and conclude, once he's been certified, that that compelling interest overrides the individual's interest in liberty, unless he can show exceptional circumstances to justify release on bail? Your Honor, the one governmental interest, whether it's pre-certification or post-certification, is, as the government states in its papers, complying with the treaty obligations and presenting the body of the extraditee. But when the extraditee poses no flight risk, that governmental interest is eliminated. That governmental interest is no longer at stake. And once there's no longer a governmental interest supporting detention, such as this case where Mr. Wong, the magistrate judge, clearly found it's not a flight risk, once the case is eliminated. And that's why we jettison the exceptional circumstances requirement. If your argument carried to its logical conclusion is that there is always a right to bail in the absence of a finding of a flight risk, that's not what the Supreme Court said in Wright v. Hankel. Well, Your Honor, I would argue, then, in Wright v. Hankel, the Supreme Court did not set forth a special circumstances rule. It stated that because of this governmental interest, the Court had an equitable interest in terms of equitable power to grant bail, whatever the special circumstance. So in Wright v. Hankel, the special circumstances language was used to expand the power of the Court, not to limit it. It did not state a special circumstances requirement that somebody had to meet in order to be granted bail in the extradition context. And how do you get around our cases in the Ninth Circuit, starting with Cameron, which clearly embody the special circumstances test? Well, none of those cases really deal with the issue here, that if the extraditee is not a flight risk, does his mandatory detention violate substantive due process? When the governmental interest is eliminated, can somebody still be detained, even when he poses no risk of flight? And I think that's the issue here, and it's not addressed in any of those four Ninth Circuit cases. Is that one of the special circumstances, the fact that the person is not a flight risk? I think that that could be an alternative way to look at this case, that one very relevant special circumstance is whether the person is at risk of flight or not. Some of these special circumstances clearly have to do with looking at the individual's liberty interest versus the government interest. In ill detainee, particularly religious detainee who cannot observe his religious rituals in jail, in those situations special circumstances have warranted bail in the extradition context. But it's because the individual's liberty interest is so great in those situations. Similarly here, if the extraditee is not a flight risk, the governmental interest in detention simply does not exist. And in that situation, the ordinary presumption of bail, the ordinary presumption of bail set forth in the Fifth Amendment, as the Solerno Supreme Court stated, should apply. Kennedy, what's the purpose of bail after certification? I think it's the same as pre-certification, Your Honor. The purpose of bail in post-certification. He isn't going to have any more court hearings, so you don't have to guarantee his presence in court. So isn't it a question of self – is he supposed to self-surrender to the marshal's service or somebody at some date to be set, and he's supposed to get a phone call or something and say, today's the day, go down and turn yourself in? Is that the plan? That would happen, Your Honor. In fact, bail has been granted in numerous post-certification – in numerous post-certification cases as set forth in our papers. It doesn't affect the surrender of the extraditee. And the purpose of bail, Your Honor, in the post-certification context is, again, the liberty interest set forth in the Fifth Amendment, the liberty interest that's a presumption that's set forth by the Solerno Supreme Court, the liberty interest that's embodied in the Constitution. Mr. Stein, should we consider what the collateral consequences might be if we adopt your argument so that it might inert to the detriment of the United States when we make an extradition request to a foreign country of someone that we're trying to bring back, and that foreign government decides, well, if the United States is going to admit extraditees to bail, then we're going to do the same thing, and that may make it difficult for us to actually bring people back that have been the subject of these requests. Well, I would point the Court to the Ninth Circuit's case in Kirby. In Kirby, the Court found the existence of special circumstances, but then went on to whether the person was a flight risk or not. And in Kirby, they found that the special circumstances were fairly weak, and yet they went on to assess whether the person was a flight risk or not. So I would submit to the Court that in practice, that is already what's happening. The Courts look at the special circumstances first. They don't focus too much on the strength of those arguments, but then they go to the flight risk, and the flight risk really is the relevant factor here. Well, in Kirby, he'd been living here as a fugitive for several years, had a family and everything, and I guess your man is somewhat like that, too. But he's categorically a fugitive to start with. Somebody wants him or they wouldn't be extraditing him. So the question of flight is sort of a risk management question. And do we have to say that the judge abused his discretion in denying bail in this case because of the decision that even though he wasn't a flight risk, he was a fugitive from somewhere? Well, Your Honor, I think the review is de novo. And the magistrate judge below actually determined Mr. Wong is not a flight risk. If this were an ordinary Bail Reform Act case, Mr. Wong would be released on bail. Now, I think in this situation, the magistrate judge was able to assess the risk of flight and found that Mr. Wong was not a risk of flight, and ordinarily he should be granted bail. I would submit to the Court that this mandatory detention without even looking at risk of flight is a violation of the Fifth Amendment substantive due process laws. And he traveled back to Hong Kong several times. Correct, Your Honor. And that we set forth as a special circumstance here, but really it does deal, again, with risk of flight. On page ---- How many of these other cases involved U.S. citizens? I remember reading in one circuit case that ---- I mean, did Henkel involve a U.S. citizen? I'm not sure. I believe it was a British citizen in that case, Your Honor, because back in those days, the majority of people being extradited were non-U.S. citizens, because treaties often had exception clauses for U.S. citizens. Now it's changed a little bit. There are more United States citizens being sought extradition for, but again, that's a minority. And here again, Mr. Wong is a United States citizen. He's lived here for 20-some years. He has serious and deep ties to the community. And again, Your Honor. Is there a delay of ---- between the time of certification and the time the person is actually turned over to the foreign country? I believe the ---- this section 31, I believe 87, states that it takes ---- there's a two-month time requirement between certification and when the person is actually surrendered, and if the government can't go over those two months. Here, of course, the time difference between certification and ultimate surrender would be great if ultimate surrender ever happened, because we have a habeas petition challenging the extradition certification. If Mr. Wong loses that petition, he's going to appeal it to the Ninth Circuit. So there could be a significant amount of time here that Mr. Wong continues to be detained. Well, aren't we here on his habeas petition? Habeas petition for bail, Your Honor. But he's been certified. But you're saying he has a separate habeas? He has a separate habeas just on the underlying extradition issue. This is a habeas with respect to his bail issue. We file another habeas in district court with respect to the actual underlying extradition case. I'm trying to ---- can he do that? I mean, it seems to me that he's basically splitting his causes of action in a way that is impermissible. I think, Your Honor, there's actually ---- if one looks at the case law, it's done quite often that people file a habeas petition challenging their bail because that's the only available means of appeal. I see. So he couldn't file the second one until after the magistrate judge had ruled. Correct, Your Honor. All right. Why shouldn't we order those two consolidated and get rid of them in one fell swoop? Because a habeas petition actually isn't ---- it's still being considered by the district judge, so it isn't before this Court. Your Honors, I would submit that the ---- that this mandatory detention rule that doesn't look at risk of flight, it makes no constitutional sense when compared to the Bail Reform Act context. In the Bail Reform Act context, the government, of course ---- We have that in your brief, so why don't we hear it from the government? Thank you, Your Honor. All right. Thank you. Good morning. Mark Krauss, United States. Your Honors, are not ---- it's not required for Your Honors to consider the constitutional challenges presented by the fugitive because this appeal should be dismissed as moot. As Your Honor had mentioned, perhaps the easiest thing would be to consolidate it. Really, the problem with the petition here is that the order that the fugitive is challenging has already been superseded by the order of extradition issued by a different magistrate judge. Well, if that's the case, I mean, he still has theoretically a right to apply for bail, doesn't he? I mean, he's still being held in custody. So how is it moot? The fugitive, what he should have done, is filed a consolidated habeas petition challenging both the certificate of extraditability and at the same time his continued detention. At this point, the order that is presently before the Court is Judge Goldman's order of detention pending the extradition hearing. That extradition hearing has already occurred, and now he's being detained pursuant to a different order. So if the Court were to rule on the constitutional challenges presented by the fugitive, it really would be an advisory opinion. Did he apply for any relief in the petition in the district court for habeas? As laid out in the government's brief, Your Honor, the Petitioner actually requested his continued detention. And it's the government's position that he has therefore waived any real challenge to his continued detention, because in that habeas petition, challenging his extradition or rather, in a request for a stay so they could file the habeas petition, he asked for his continued detention. As a consequence, his continued detention is really now before the Court. Wait a second. He requested his continued detention? Your Honor, in the proposed order submitted by the fugitive asking that the extradition order be stayed, the Petitioner stated that he remained in the custody of the United   This is an interesting question. How can a person challenge the conditions of his confinement when he has essentially agreed to them? That's the government's position, Your Honor, that the — really, the Petitioner has waived any opportunity to challenge his continued detention because he is submitted to detention by proposing to the district court that he remain detained. That inconsistent behavior before the district court waives this appeal. So in the alternative, the — Does that mean that he'd be detained? Does that mean he'd not be turned over to the Hong Kong authorities? He has explained that the reason he wishes to remain in the custody of the United States Marshals Service is that he can continue to pursue his habeas petition. Either way, Your Honor, the issue is whether he should be released on bail pending the completion of those habeas proceedings. But he doesn't want to be released on bail. He wants to be retained in custody. Pursuant to the ex parte application for a stay of the extradition order. You're right, Your Honor. We'll get an explanation on that. I'd like one. Your Honor, so it's the government's position that the — the appeal should be dismissed as moved or waived. Turning to the arguments raised by the Petitioner, there's been a suggestion that circumstances have changed historically, and now the extradition process is different, such that now we are dealing with American citizens who are facing ordinary crimes, whereas at the time of Wright v. Henkel, we dealt with people from other countries with sort of odd and extraordinary crimes. That claim is actually belied by Wright v. Henkel itself, a case in which a United States citizen was — was facing charges of forgery in the United Kingdom. As a consequence, the suggestion that the historical circumstances surrounding extradition have changed, such that re-evaluation of the test under Wright v. Henkel really just has no basis. The — as Your Honors have acknowledged, the special circumstances test is a long-standing one. It's been around for about 100 years. It's been a long challenge, too. It's kind of an oxymoron, isn't it? The Wright case doesn't say that it requires any test. Well, Your Honor, I would disagree. In Wright v. Henkel, the Petitioner did challenge, did make a due process challenge. What did the Court say? The Court not only found that courts have jurisdiction to consider bail, but the Court went on to consider the record in the case and decided on the record before it that the Petitioner had failed to show special circumstances. This is not a case where the Supreme Court simply remanded for further fact — They said it first. They said ordinarily, this being an extradition case, ordinarily bail is not permitted. They said, however, they left open the possibility that somebody might come up with some set of circumstances that would make bail a — a good idea. But that didn't create any kind of a measurable test that we could — that a court can apply. It just was kind of gibberish about special circumstances. And our court just blandly started picking it up and throwing it into the opinions as if it was some kind of a — of a — of a mantra. It's so meaningless. Well, Your Honor, the — not only this Court, but courts throughout the country, every circuit that has considered the issue, has found that Wright v. Henkel decided a special circumstances test and has applied it. The — and they've laid out a number of — They could have said that each case is decided on its own facts, and it depends on the facts of the case, and then the Court will act accordingly. The special circumstances is just one of those meaningless mantras that judges and lawyers like to toss around when they can't think of anything important to say. Well, the underlying — the underlying, you know, rationale would be, you know, is this person a flight risk? And, you know, after certification, well, the governmental interest is, of course, increased, and I would think the burden is on the defendant or on the so-called fugitive to convince the Court that he or she is not a flight risk. And if they're not a flight risk, and the magistrate found that to be true here, that means that when the time comes that they've got to pick up their toothbrush and report to the marshal's office that they're going to do that. Your Honor, the — this Court has already — I mean, we have — I think — I remember some cases where people are kept in custody for a long period of time before the requesting State even comes around to pick them up. Well, Your Honor, two things. First, in the Salerno case, this Court decided that the risk of flight was not a special circumstances warrant and bond. Well, maybe in that case that was true. The other point that Your Honor raised was the issue of whether there may be a circumstance in which a fugitive may be required to wait an undue amount of time. And, in fact, that has been determined to be a special circumstance warrant and bond. It's important to note that in this case, that's not a factor. The requesting party submitted its papers in a timely fashion, well within the requirements established by the treaty. Furthermore, the extraditing court held the hearing in a timely fashion and issued its order within one week. The — and although that's not part of the record, Your Honors, the habeas court has also issued a tentative ruling, and it is also proceeded in a timely fashion in order to make sure that the petitioner's claims have been adjudicated. So as the Magistrate Court decided, Magistrate Goldman decided at the onset of this case, the issue of an undue wait for the fugitive is really a factor. If the person is not a flight risk, not a flight risk, it's a given, let's say that's a given here, then what's the interest of the United States in keeping them locked up until the requesting party shows up to pick him up? Well, as the fugitive has conceded this morning, the government has a compelling interest in ensuring that it can meet its treaty obligations by providing fugitives upon request when the requesting party has done all that it has — And if they're not a flight risk, and if you've got whatever equipment you put on them, know where they are at all times, and you take away their passport and their child puts up a $200,000 bond with security, it would seem to me the flight risk is very, very minimal. Well, Your Honor, the Supreme Court has decided that it is under those circumstances that the petitioner still must show special circumstances to warrant bond, and that the government's interest in honoring those treaty obligations is the paramount concern, as Judge Hasty explained in the Jimenez case. It's important to recognize that it's not just the government's ability to get its own fugitives pursuant to — A lot of these countries, they don't honor our extradition request if the case involves capital punishment. A lot of those things are actually part of the treaties themselves that allow the treaty partners to contractually determine the circumstances under which they will surrender fugitives. For example, some treaty partners will require that their own citizens — But some treaties are silent on the subject. Yes. And the government on the other side of the ocean says, we're not going to send them to you. I mean, didn't France do that recently? I'm not aware of — I think they did in one of these terrorist cases, where capital punishment was — And France will have to live with the collateral consequences of perhaps not having the United States honor its treaty obligations, or in the alternative, France may find its ability to operate in the international arena somewhat constrained because potential treaty partners, perhaps not in the extradition context — I'm sure the French are worried about that. Perhaps the French have a privilege in that area. However, the United States certainly has an overriding interest, a paramount interest, in ensuring its treaty obligations can be met so that it can expect to operate in the international arena in a fashion that is consistent with its needs. Mr. Krauss, before you sit down, you indicated that the district court had ruled with regard to this post-certification issue. Has a notice of appeal been filed from that ruling? At this point, the magistrate — in the central district, a lot of times, behaviorist petitions will be formed out to magistrate judges. The magistrate judge has issued a tentative ruling, a report and recommendation that has been submitted to the parties. And again, this is not in the record. It was just released last week. The parties have one week to — I think until Monday to respond with objections to the report and recommendation. At that point, it will be up to the district court to decide whether to adopt the report and recommendation. All right. Well, why don't we do this? Because I want to try and avoid piecemeal litigation, which is what we seem to be facing here. Why don't you provide us with a status report? And if there is a notice of appeal filed from a final order of the district court, move to consolidate that appeal with this one in order to economize the time delay here. Yes, Your Honor. Thank you. Who is the district judge on that? The district judge is Judge Snyder. The magistrate judge who currently has issued the report and recommendation is Judge Chapman, who you may recall is also the one who issued the certificate of extraditability. Chapman? Chapman. Your Honors, I'd like to just briefly address a couple of issues. First is the application for a stay after certification. Your Honors, we made that application for a stay that stated that Mr. Wong would remain in the custody of the United States Marshals. The only reason why we did that was because at the time he was in the custody of the United States Marshals because he had been denied bail, and we didn't want him surrendered over to Hong Kong while we were doing the habeas portion of his extradition case. So it's just a matter of description. At the time he wasn't given bail. Our appeal here was still pending. So we did not in any way waive our right to challenge his detention. Our appeal here was still pending, and we simply wanted a way to avoid having him surrendered to Hong Kong. Moreover, I would note for the Court that the application for a stay was not the proposed order that we submitted was not granted. So it never had any effect. I guess what troubles me is the role of the Federal Courts in extradition proceedings is very limited to determining identity and probable cause. Once that has been concluded and your client is certified for extradition, the fact that you want to challenge that finding and seek a motion to stay while that appeal is pending, don't you have to show something more than we'd like to don't you have to show a likelihood of success on the merits in order to justify the stay? Because otherwise it seems to me all you're doing is interfering in a treaty obligation between the United States and Hong Kong by which our government has sworn that it will promptly comply with extradition requests once the terms of the treaty have been complied with. Your Honor, I don't want to get into our substantive argument too much. Substantive argument too much, but in terms of challenging the extradition, our issue there is of constitutional importance. We're arguing that that is not the Hong Kong-United States extradition agreement is not a treaty. Well, if that case is not before us, then shouldn't we dismiss this appeal on grounds of mootness? Because the order by which your client was detained pre-hearing is now no longer in effect. It was superseded by a new order that you want to challenge in a different proceeding. On the mootness argument, Your Honor, the challenge is exactly the same. But it's a different order, isn't it? Yes, Your Honor. But, Your Honor, I would ask the Court to do that. You can't have it both ways. You're going to challenge the pre-hearing detention order or you're going to challenge the post-hearing detention order, but you can't tell us that we can look at it for one purpose but not for another. That seems like you're just gaming the system. Not at all, Your Honor. I – we would ask the Court to construe this appeal of the detention order. Mr. Wong is still being detained. And I think that's the underlying issue. And whether the Court views this as a challenge to pre-certification or post-certification detention, it's still a challenge to his detention. Then wouldn't it make the most sense to simply consolidate the second case that you're about to file a notice of appeal on and just handle the whole thing in one proceeding rather than have two separate panels of the Ninth Circuit look at this case in pieces? The issues, number one, are distinct. One is a bail issue and one is an extradition issue. But in the other case, the court is going to look at it as a challenge to pre-certification detention. But why do you need two separate panels? That's my question. Why shouldn't we just consolidate this whole thing in front of one panel? Your Honor, it was just procedurally. He was detained back in April 2003. We had to challenge that bail – that detention order at that time. We didn't want Mr. Wong detained all the way from April 2003. In fact, we submitted an emergency motion in this case. We've been diligently trying to pursue that appeal. And in fact, the underlying extradition – Your answer is that you wouldn't have any objection if we consolidated the two proceedings? Your Honor, I would ask the Court not to do that, because in this case, we don't know when the district judge is going to decide the habeas issue. We've gotten a report and recommendation from the magistrate judge, the same magistrate judge that certified Mr. Wong for extradition, but we don't have an independent determination from the district judge at this point. We don't know how long that's going to take. It could take months. And in the interim, Mr. Wong is still being detained in violation of the Substantive Due Process Clause. On a different order? Under the same test, though, Your Honor. All right. I understand your position. We'll work it out. And very briefly, Your Honor, the – again, the habeas issue – the extradition habeas issue right now is still – before that magistrate judge has issued a report and recommendation, but, again, we don't know how long that's going to take until the district judge makes a decision. Okay. Thank you, Your Honor. Thank you. The matter is then submitted.
judges: Goodwin, Pregerson, Tallman